Case number 23-7064. TIG Insurance Company, a successor by merger to International Insurance Company, an international surplus line insurance company, appellant, versus Republic of Argentina, a successor to Caja Nacional de Auro y Seguro and Caja Nacional de Auro y Seguro. Mr. Bravin for the appellant, Ms. Raman Murthy for the appellees. Good morning. My name is Mark Bravin, and I'm with the law firm of Mitchell Silberberg and representing the appellant, TIG Insurance Company. May it please the court, I would like to summarize what the case is about. Simply put, it's about the interpretation and application of the two jurisdictional exceptions, the waiver clause and the arbitration exception. And as an issue of first impression for this circuit, how do those two exceptions apply in the case of a sovereign successor to a sovereign entity that entered into a contract with clauses that are generally recognized as waiving immunity? I want to start with the status of Caja when the contracts, the reinsurance contracts were made. Putting aside exceptions to the FSIA, Caja would not have been entitled to sovereign immunity at that time, correct? That's correct, Your Honor. By accepting a contract governed by U.S. law, U.S. forum, their immunity is waived. And with regard to the alter ego theory, I take it that you could either get there through an agency argument or through a fraud injustice argument. I know you have an agency argument. Are you also making a fraud adjustment argument? Yes, Your Honor, we are. At the time that Argentina, through its resolutions, began the process of extinguishing the life of Caja, liquidating it, it expressly put out in resolutions that it was taking over the assets of liabilities. I thought that the alter ego, I could be wrong, I thought the alter ego theory looks at what was the status of Caja at the time the reinsurance contracts were made, which would have preceded the resolutions in the 90s and 2000s. Yes, Your Honor. Are you saying there was any kind of fraud or injustice going on with regard to the relationship between Caja and Argentina at the time that the reinsurance contracts were made? The fraud and injustice manifested itself when Argentina backed away from the obligations that Caja entered into in those contracts, obligations to receive the premiums, invest them, and have a claims. And so those benefits were retained and there was no effort by Caja to pay. I understand that argument. I think that you said at some point in the district court that Caja was, quote, vested with decision-making autonomy and endowed with its own capital. So, I mean, that doesn't sound like an alter ego relationship. If that's all that there was, then I would agree with Your Honor's assessment. But in fact, from the very outset, the government of Argentina created Caja not just as a shareholding interest, but as an entity that was controlled by the government. What's your example of, like, an example when Argentina actually exercised the kind of control over Caja that is not typical in a parent-subsidiary relationship? So the clearest example is when the government decided that it would direct Caja to enter the life insurance business and insure all government officials at a certain level and above. And dictated the price at which that insurance would be offered. Dictated the circumstances in which those policies would be applicable. That's the information you submitted with your motion for reconsideration, right? Yes. Okay. And was there a reason you couldn't have presented that earlier? Sorry? Is there a reason you could not have presented that same material with your opposition to the motion to dismiss? No. We could have. This case proceeded in stages in part because we believed and urged the district court to apply the successorship principles under the common law. And it was only after the court issued its opinion that we said, too late. I'm not going to consider that evidence. So can I ask you to move to the arbitration exception? So I understand your argument at a high level to be that when we look to whether the agreement is made by Argentina, we should just look to successorship as one of several sort of potential doctrines under the common law that would bind a non-party to an agreement. Is that essentially the point? That is one of our arguments, but it's not the only one. We start with the principle that you look at the text. And in this case, the text uses a general term borrowed from the common law, made by. It doesn't use words that would have narrowed the focus of the exception to arbitration agreements signed by a sovereign or entered into by a sovereign. And so using that analysis, the statute is broader than what the district court. My question would be, in this case, what is the law that governs the question of whether Argentina should be treated as a successor? Is it Illinois law? Is it something else? Is it federal common law? All of the elements presented in our briefs and in the record below show that Argentina issued resolutions adopting the business, the responses, the assets, the liabilities, the future contingent liabilities. And as the successor in interest, it stepped into Caja's shoes under the contracts. Yeah, I shouldn't hide the ball. I guess what I'm getting is I don't think it's really been briefed. What would be the source of law? And so I'm wondering if you think it would make sense if we agreed with you the first level of your argument to remand for sort of a choice of law analysis to occur. So Argentina, by adopting the contracts in the district court, held that they adopted the contracts. They adopted the choice of law in those contracts, which is Illinois law. And that's the law that governs all of the substantive issues in the case and ought to govern these same questions that you're asking about. Do we have enough facts here? I mean, if we agree with the legal principle, as Judge Garcia said, that successors in interest should be liable. Do we have enough information about whether Argentina is, in fact, successor in interest? I mean, there are questions about choice of law, possibly, as well as the underlying facts. Yes, Judge Rowe. You have enough in the record to show that under U.S. law, which is applicable to the contracts, Argentina's resolutions need to be read as adopting. We have no briefing on Illinois law. You said Illinois law governs the question of how the facts here would apply under Illinois law. That's correct. And we don't rely on statutes for the successor in interest point here. We rely on the facts. And that's why we pointed to General Star as a premier example, not the only one, but one that is exactly following the facts that we have. The Sixth Circuit did not rely on statutory law. It relied on common law. And that's what we are asking this court to do. And under the common law principles of taking over the business, which the district court missed, a business that continued with respect to incoming claims that had to be paid by taking over the assets and liabilities and promising that it was taking over the future contingent liabilities, Argentina became the successor under the common law principles that apply here. You mean federal common law principles? The Supreme Court has said that the common law from the states can be applied in a federal case. And there's obviously been a debate about whether there is a federal common law. I don't think it's too much to ask that you identify the source of the common law you want us to apply. It could be federal common law. It could be Illinois common law. It could be Timbuktu common law, if that's your argument. But what common law is it that you're looking for? So the common law of contracts, of those are all principles that apply across the nation in cases where a foreign sovereign has taken over the responsibilities of a lower level entity. Federal common law? The cases don't identify, they simply articulate. I thought you had taken the position that it was Illinois law. Because I'll tell you, if you try to look, states approach these concepts differently. And the point would just be that maybe it's Illinois, maybe it's Argentine law. But we don't have before us, and maybe it hasn't really been briefed, what the right answer is. I think in part, I answered the question by saying we're not relying on statutes to establish successorship. We're relying on how the common law has assigned responsibility for an entity that takes over the contract that has these... Can I try it another way? Yeah. I think your opposing side can win, even if you are a successor of interest, if we buy the rest of their arguments. But I think in order for you to win, you have to show you are a successor of interest. And in order to show that, you need to identify for us the law that applies. And I think at this point, we could write an opinion saying, you haven't met your burden, because you haven't identified for us what law applies to show you are the successor of interest. In that event, this court would be going against all of the cases that we cited in our brief, where the party that signed contracts with an arbitration clause, with recognized implicit waiver clauses, passed those waivers and responsibilities to their successor without... Unless my colleagues want to ask more, I'm going to move on after this question. But a common law that should apply. Correct statement? Partially. We identified the principles. We didn't tie them to a particular state. You did not identify whose common law? Whose common law? That would be correct. That would be correct. Okay. Can I ask one? May I add just one other issue, which is in our briefs? All of this goes away if the court recognizes that Argentina is not entitled to raise these questions in this appeal, because it waived them implicitly by litigating for two years on papers where we said... What was the response of the meeting that they filed that would have triggered the waiver? In this type of proceeding, it's not a pleading. It's a response to the petition. And the law in this circuit, going back to McKesson versus Iran, is that you look at the reality of what's going on. And in that case, this court said, what Iran filed without asserting sovereign immunity cannot be subject to the typical rules, because in that context, they weren't expected to assert sovereign immunity. But here, in our petition for enforcement, we laid it all out. We said, in case Argentina wants to raise jurisdictional immunity, here are all the reasons why, and it just ignored those. Just briefly on this, all the arguments you're making are about Argentina's litigation conduct in this litigation. Correct. I think the question before us is whether the Northern District of Illinois had subject matter jurisdiction in 2018, and there's nothing to point to before that, that would be an implicit waiver of this kind, right? Argentina never filed anything. That's correct. But for the 2018 judgment, the court had an arbitration work against Argentina, and the court's mandate under U.S. law was to consider whether under the New York Convention, which Argentina is a party to, whether this arbitration work should be enforced, and should be confirmed, recognized, and enforced as a U.S. judgment, and it made that determination. And that's why that court had jurisdiction. Do you agree that in this circuit, subjective intent is required for an implied waiver? I agree that intent needs to be inferred by conduct, by promulgation of resolutions. You don't have to get into the mind. There is no mind. Obviously, there's no way to read a person's mind, but when I read subjective intent, as the district court used it, I take it to mean that there needs to be objective indications of subjective intent. You know, we do this all the time with, like, mens rea, with the criminal. It's not like we have to read the criminal's mind, but if there's objective indications of a mental state, then that's enough. And here, I think the district court was saying there have to be objective indications of a subjective intent to waive. And I guess, do you agree with that standard? I do. And this court has recognized that... Did General Starr... Excuse me? Did General Starr make any inquiries into subjective intent? General Starr followed a decision law, which includes in this circuit, such as worldwide minerals, that the issuance of, in this case, decrees, saying we're taking it over, we're taking it over. When a party, when CAJA signed contracts that had the typical examples of accepting foreign law, foreign forum, it didn't say in the contract or anywhere else, we intend to waive sovereign immunity. That's inferred from what it did and what it said. And that's what we're asking this court to do here, is to infer from what Argentina did in the resolutions, to say it demonstrated sufficiently that it intended to take the contracts with all of their provisions, including the exceptions that have been recognized by this and every other court. Thank you. May it please the court, Ratna Ramamurthy from Cleary Gottlieb for the Republic of Argentina. The district court was correct to reject TIG's enforcement action because neither of the judgments that TIG seeks to enforce confers jurisdiction over the Republic under the Foreign Sovereign Immunities Act. TIG points to the FSIA's perpetration and implied waiver exceptions based on clauses in certain reinsurance contracts, but those contracts were entered by other parties acting on their own behalf, not on behalf of the Republic. And therefore, the arbitral panel here determined that Argentina was a successor in interest. How do we think about that decision by the arbitral panel? Are we bound by that? What is the effect of that ruling by the arbitral panel for this panel? Yes, the arbitral panel in its default award made certain pronouncements. But here, I think the key is that there is a separation between the versus the jurisdictional questions that are before this court. And as a result of that, there are several cases across different circuits in which it's been found that a sovereign is responsible for contractual liabilities. Right. But do you agree that if Argentina is a successor in interest, then they would be bound by the arbitral clause? I know you obviously contest whether Argentina is a successor interest, but if we were to find that Argentina was a successor in interest, wouldn't we have subject matter jurisdiction? No, Your Honor. So even if Argentina were a successor in interest in some sense to the contractual liabilities, it would still be necessary to show that Argentina had intended to waive its immunity under the implicit waiver theory, or that it had made an agreement to arbitrate. So you think being a successor in interest is not sufficient for that? That's correct. It is not sufficient in this context. And for example, in Irish bank cases, we had a very similar factual paradigm where there was responsibility in some sense for liabilities, but that was a separate question from whether or not a sovereign could be jurisdictionally bound by contractual clauses that had jurisdictional implications, such as the choice of law clause or... If they are a successor, why isn't that enough? I can understand why implied waiver would be different. Why isn't that enough to show the agreement was made by Argentina? And maybe one way to tee that up is, as I understand it, you concede that if Caja was Argentina's alter ego at the time of signing, then Argentina would have made the agreement, right? But alter ego is, if you look in a treatise, that's just one of five, six, seven ways that we bind non-signatories to agreements. And successorship is another one. And so it seems to me, I'm not sure why successorship or assumption would be on a different level than alter ego. Yes, Your Honor. So alter ego is a doctrine with a different status as a result of the fact that the alter ego doctrine within the FSIA context has been developed as analysis of the statute. So this court in Transamerica, for example, held that the Bancheck alter ego analysis is the correct test for determining whether or not a foreign state can be considered jurisdictionally bound. Common law theories, such as successorship or others, have a separate function. And this is why, for example, in the Gator Assets case, the Second Circuit rejected and expressed some great skepticism over the idea that those theories could be applicable. But alter ego doesn't, the doctrine of being an alter ego and piercing the veil does not come from the FSIA. What those opinions say is that because you are treated like a party under an alter ego theory, then you've made the decision. And what I'm struggling with is why you wouldn't also say if you are treated like a party because you are a successor to the contract, then you have treated as having made the agreement. So the alter ego... In other words, we just haven't had this case yet. Yes, I understand. So the alter ego doctrine has been carefully calibrated for judicial opinions. So the Transamerica case, the GSS group case, have explained the contours of when you have the limited finding and you have the exceptional circumstances of an alter ego finding that would create a world where the foreign state could be bound by an entity that was not the foreign state itself. Common law, as I think your discussion with plaintiff's counsel brought to light, brings in this possibility of just extreme variation and a much wider scope potentially than the FSIA was enacted. The FSIA was enacted to stem those binding of a foreign state was really carefully calibrated. The alter ego doctrine has been developed in a way that is consistent with that, whereas bringing in all these other common law theories creates that issue. So what is the source of law for the alter ego theory? Is that just federal common law? Yes, exactly. So that would be... It was first developed in the Bancheck case and then it was applied in this context to jurisdiction in the Transamerica decision by this court. So it evolved and the Crystal Lake case explicitly says this as a function of federal common law in interpreting the foreign sovereign immunities. And is there any case saying that successorship should not be developed in the same way if and when cases arise? So the closest to that would be the Gator Assets case out of the Second Circuit, which expressed great skepticism over the idea of importing in these other common law doctrines. So I think the difference is the alter ego doctrine has been developed within the context of the FSIA and what TIG is seeking to do is to expand the limitations of the FSIA through reference to these other types of common law doctrines. Can I just get some help on terms and titles? So assuming that CAJA had the relationship with Argentina that you think it had when these insurance contracts were formed, was CAJA a sovereign instrumentality, a sovereign entity? What's the term? Instrumentality would be the correct. Sovereign instrumentality. Yes. Yes, exactly. And as a sovereign instrumentality, CAJA is presumed to be separate from the Republic. It acted on its own behalf. It was adequately capitalized. It's created pursuant to an enabling law. It had its own directors and the Republic really had very limited involvement. So what if CAJA's business had been transferred to another state instrumentality rather than having its assets being assumed by the Republic? Even in that context, you would still have to find that the receiving instrumentality intended to accede to the contractual clauses with jurisdictional implications. So under the implicit waiver exception, you'd still have to find subjective intent in the circuit of the second instrumentality to waive its own immunity. Or in context of the arbitration agreement, you would still have to find that the second instrumentality basically survived the alter to have made the agreement. So I have a question about that. You relied heavily on the Firtree case, which I believe is the Ireland, assuming the contracts, the business of a private entity. And that case explicitly distinguishes the Egypt Air case in which the prior entity was a sovereign entity. And for implied waiver purposes, for example, that could be very important because then you know that that contract, as applied to the prior entity, affected a waiver of sovereign immunity. And what those cases are, the distinction they draw essentially is saying if you assume the liabilities of a entity that had contracts with the effect of waiving sovereign immunity, then you implicitly, you don't just get to come and tell us we didn't realize that. You might be able to have that argument if it's a private entity. Why isn't that reading of Firtree and the Egypt Air cases something that cuts against you? There's an additional distinction with the Egypt Air cases, which is there you had a subrogee relationship. So you explicitly had a factual paradigm where one entity stood in the shoes of the other as a subrogee. That's different than what we have here. If you're a successor, don't we generally say you stand in the shoes? We don't have like the facts or know what law to apply to make that determination. But I'm pretty sure that in any case where you say you're a successor or you assume the liability of another party under a contract, that means you stand in their shoes in the exact same way. So I think there's a separation here between standing in shoes for terms of assuming responsibilities or liabilities versus standing in shoes for jurisdiction. And there's an additional hurdle as a result of that, which is you must show under the FSIA that there was an agent who had authority to waive the entity's immunity. So this circuit has not pronounced on whether actual or apparent authority is required. This is the capital keys case. But here you don't have either one. And so apparent authority, as explained in the capital keys case, turns on representations made by the principal, so here by the republic. And there are no representations by the republic that Caja or So I think this paradigm shows exactly what the problem would be with that rule, which is that you would not be able to show that there was authority for such a waiver because instrumentalities presumptively act on their own behalf, which is exactly what was happening here with Caja. Thank you very much. Mr. Brayden, we'll give you two minutes. I had intended, Your Honor, to reserve four minutes, but I'll stay up here only as long as you tell me it's okay. So I do have some points I'd like to rebut from what you've just heard. First, Argentina cites no authority, and we couldn't find any, that where a successor steps into the shoes of a predecessor sovereign entity, that it gets to choose which portions of contractual provisions it's going to be bound by and which ones it won't. Argentina didn't indicate in its pronouncements and its resolutions that it wasn't going to take on some parts of the contractual obligations, and it listed the 2001 to indicate, and perhaps she's right, that federal common law is the source for alter ego and ban check and implicitly in General Star. There wasn't in General Star a statement that we are applying federal common law, but that's what they were doing, and I think that should be enough for this court. I also want to mention that Argentina, by statute, got 70% of the income, the profits, from Caja. Its attorney general issued an opinion saying that the kind of entity that Caja was, an autarkic entity, that everything it does is for the benefit of the state, and the separation that U.S. law recognizes between a sovereign entity and the sovereign doesn't exist here. They had federal employees, federal facilities. They were told to issue life insurance to federal officials. There's a whole list in our brief, and there's more than Caja and Argentina were alter egos from the outset, from 1979, not just at the time of the arbitrations. Thank you. And then finally... I see you're out of time, but if my colleagues have any further questions. Okay, thank you. Thank you, Ben.
judges: Rao, Walker, Garcia